IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNIVERSITY MALL SHOPPING CENTER, L.C., a Utah limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>MACY'S WEST STORES, INC. dba MACY'S,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:10-CV-1159 TS |

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion in part and deny it in part. Specifically, the Court will grant Plaintiff summary judgment on its claim for breach of contract, but will deny summary judgment on Defendant's counterclaims.

I. BACKGROUND

The facts of this case are largely undisputed. Plaintiff brings this action against Defendant, alleging that Defendant failed to pay rent according to the terms of a Lease

1

Agreement entered into by Plaintiff and Defendant's predecessor in interest, Zion's Cooperative Mercantile Institution ("ZCMI"), thus breaching that Agreement.  Plaintiff brings claims for breach of the Lease Agreement and for declaratory judgment.

Defendant argues that its requirement to pay rent was abated based on the closure of the Mervyn's store at the University Mall.  Defendant further argues that Plaintiff breached the Lease Agreement and two other agreements by failing to maintain a proper mixture and balance of tenants at the University Mall and failing to obtain Defendant's written approval prior to expanding the Mall.

On October 2, 1971, University Mall, Inc., a predecessor in interest to Plaintiff, entered into a Construction, Operational and Reciprocal Easement Agreement ("REA") with ZCMI and J.C. Penny Properties, Inc. ("J.C. Penny").  The purpose of the REA was "to establish a general plan for the protection, development, maintenance and improvement of" certain parcels of land owned by the parties to that agreement.[1]  Under Section XXII(A)(2)(b) of the REA, Plaintiff agreed to use its best efforts to "[h]ave at all times a proper mixture and balance of occupants."

The parties to the REA entered into a First Amendment to the REA on January 31, 1973 (the "First Amendment").[2]

The parties to the REA, along with Mervyn's, entered into a Second Amendment to the REA on July 31, 1981 (the "Second Amendment").  Section 6(d)(3) of the Second Amendment provides: "Any future structural additions to the Enclosed Mall or to the Shopping Center shall

---

[1] REA at 2.

[2] The First Amendment is not relevant to any issues before the Court.

be subject to prior written approval of ZCMI, Penney and Mervyn's." Section 32(a) of the Second Amendment provides that "Developer shall have no right to future expansion for Developer Mall Store floor area without the prior approval of ZCMI, Penny and Mervyn's."

On June 30, 1999, Plaintiff, as Landlord, and ZCMI, as Tenant, entered into the Lease Agreement. Section 2.1 of the Lease Agreement provides, in pertinent part:

> Rent. Tenant shall pay Landlord the rent set forth as follows
> (a) Lease Payments During First Five 5 Years. For the first five (5) years after the Commencement Date, Tenant shall not pay any base rent to Landlord. Notwithstanding the foregoing, if Tenant's gross sales exceed $42,500,000 in any calendar year during this time period, Tenant shall pay to Landlord rent of 1.5% of total gross sales from the Demised Premises, less credit for property taxes and insurance paid by Tenant.
> (b) Lease Payments After First Five Years. After the expiration of the five year period set forth above (par. 2-1(a)), Tenant shall pay Landlord the greater of 1) $360,000.00 per year ($30,000.00 monthly or 2) 1.5% of the total gross sales from the Demised Premises for the lease of the Demised Premises. Percentage rent shall be offset by property taxes and insurance paid by Tenant for the applicable year. Notwithstanding the foregoing, if Nordstrom or another full-line department store is not committed to operate at University Mall, then the rent payments set forth in this paragraph shall be abated if Tenant's gross sales from the Demised property have not exceed (sic) $30,000,000.00 in a prior calendar year. Such abatement shall not include Common Area Charges and Merchants Association Charges which charges shall be due regardless of whether or not Tenant's rent has been abated pursuant to this paragraph.

Nordstrom began operating its store at University Mall on approximately March 29, 2002. Mervyn's, which had operated at the University Mall since 1981, closed its store on December 31, 2008.[3] Defendant stopped paying rent on September 1, 2010. Defendant contends that its

---

[3] J.C. Penny had also been operating at the mall from 1973 to 2008. Docket No. 26, Ex. A, ¶3.

obligation to pay rent abated based on the closure of Mervyn's. In addition, Defendant contends that Plaintiff breached certain provisions of the Lease, REA, and Second Amendment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[4] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[5] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[6]

With regard to Plaintiff's motion for summary judgment on Defendant's counterclaim, Plaintiff

> has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law. The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial. If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial.

---

[4] FED. R. CIV. P. 56(a).

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[6] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.[7]

III. DISCUSSION

A. BREACH OF THE LEASE AGREEMENT

Plaintiff's claims involve its contention that Defendant owes but has failed to pay rent, thus breaching the terms of the Lease Agreement. In response, Defendant argues that "[w]hen Mervyn's closed at the end of 2008, Macy's was permitted to abate payment of rent in accordance with the terms of the Lease and was no longer obligated to pay rent to University Mall."[8]

The resolution of this dispute depends on the language of Section 2.1 of the Lease Agreement. Under Section 2.1, Defendant was not required to pay rent for the first five years of the Lease Agreement: 1999 to 2004. After that period, Defendant was required to pay rent, with one caveat. Section 2.1(b) states, in pertinent part: "if Nordstrom or another full-line department store is not committed to operate at University Mall, then the rent payments set forth in this paragraph shall be abated . . . ."

Plaintiff argues that Defendant became obligated to pay rent after the initial five year rent-free term because, during that period, Nordstrom not only committed to operate, but actually began operating in 2002. Indeed it is undisputed that Nordstrom opened its store in 2002. However, Defendant argues that, once Mervyn's closed its store it was no longer under any

---

[7]*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted).

[8]Docket No. 13, ¶ 11.

obligation to pay rent, asserting that Mervyn's should be considered within the definition of "another full-line department store." Both parties contend the language is unambiguous.

Defendant's reading is not supported by the contract and, therefore, the Court finds that Plaintiff is entitled to summary judgment on its claim that Defendant is in breach of the lease agreement. The language of the Lease states that Macy's rent abates "if Nordstrom or another full-line department store is not committed to operate at University Mall." The term "committed" means to "pledge or bind."[9] The term "operate" means to "manage and run (a business)."[10] Thus, under the plain language, Macy's obligation to pay rent was premised on Nordstrom or another full-line department pledging to manage and run a store at the mall. At the time of the Lease, Mervyn's was operating at the University Mall and continued to operate until 2008.[11] Thus, Mervyn's could not pledge to operate, it was already operating and continued to do so thereafter. In contrast, Nordstrom committed to operate in 2002, thus triggering Macy's requirement to pay rent at the end of the initial five year period.

Defendant's reading of the language would make its rent payment contingent not only on getting Nordstrom or another full-line department store to commit to operate at the mall, but also on the continued operation of the anchor stores in place at the time of the signing of the Lease. The parties could have easily made this part of the agreement by adding language to the effect that rent was contingent on the continued operation of Mervyn's. The parties did not, however,

---

[9] New Oxford America Dictionary 349 (3d Ed. 2010).

[10] *Id*. at 1229.

[11] Mervyn's lease term did not actually end until 2011.

include such a provision into the Lease Agreement and the Court will not read such a requirement into the agreement.

Because the Court finds the language to be unambiguous, the Court need not consider the parties' extrinsic evidence. Even if the Court were to find the language ambiguous, the only extrinsic evidence presented is the 1998 Orem City Agreement.[12] That agreement only strengthens the Court's conclusion that Macy's rent was not contingent on the continued operation of Mervyn's.

A review of the Orem City Agreement reveals that it mentions nothing of the continued operation of Mervyn's. Indeed, Mervyn's is only mentioned once in the agreement as being one of the mall's three anchor stores. The 1998 Orem City Agreement makes clear that the parties were concerned with attracting either Nordstrom or another *new* full-line department store to the mall to take the place of J.C. Penny, which had decided to move to a neighboring city.[13] The parties to the agreement were taking this action in an effort to convince Macy's to stay at the mall, as Macy's had also been offered incentives to move from the mall.[14] Other provisions of the 1998 Orem City Agreement confirm that the parties were interested in getting either

---

[12] Docket No. 26, Ex. A-1.

[13] *Id*. ¶ 1. ("[Developer] is also working on signing a new anchor store to replace J.C. Penny.").

[14] *Id*. ("The purpose of this Agreement is to provide a mutually advantageous situation that makes it financially advantageous for [Macy's] to remain in the University Mall, that increases [developer's] chances of signing a new suitable anchor store for University Mall, and that allows Woodbury and the City to benefit from the continued presence of an improved [Macy's] in a refurbished University Mall.").

Nordstrom or another store to *open* at the mall.[15] Indeed the city's obligations under Paragraphs 4.2.1 and 4.2.2 differ based on whether Nordstrom opens or if a full-line department store other than Nordstrom opens. All of this language points to some future action, namely getting Nordstrom or another new full-line department store to commit to operating at the mall in the future. Despite Defendant's arguments to the contrary, the agreement does not espouse any concern with retaining Mervyn's as a tenant and no provisions of the 1998 Orem City Agreement are contingent on the continued operation of Mervyn's. Thus, this agreement does not aid Defendant's interpretation and only supports the conclusion that Macy's was obligated to pay rent beginning in 2004. Therefore, the Court finds that Plaintiff is entitled to summary judgment on its breach of contract and declaratory judgment claims.

B.  COUNTERCLAIMS

Defendant has asserted a counterclaim against Plaintiff for breach of contract. Defendant asserts that Plaintiff "breached the Lease, REA, and Second Amendment to the REA by failing to maintain a proper mixture and balance of tenants at the University Mall; failing to obtain Macy's written approval of expansion at the Mall as described above; and failing to abate Macy's rent after the closure of Mervyn's."[16] The Court has addressed Defendant's final argument above in relation to Plaintiff's claims for relief. Therefore, the Court will limit its discussion here to

---

[15]*Id.* ¶¶ 2.1, 2.8, 3.5.1, 4.2.1, 4.2.2.

[16]Docket No. 13, ¶ 22. Plaintiff has moved for summary judgment on the allegations contained in Paragraph 14 of Defendant's statement of "Background Facts" related to its counterclaim. However, Paragraph 14 does not appear to seek any relief. Rather, that paragraph merely provides a factual allegation to support Defendant's specific counterclaim. Therefore, the Court will not address Plaintiff's arguments with respect to Paragraph 14.

Defendant's assertions that Plaintiff breached certain provisions of the Lease, REA, and Second Amendment by failing to maintain a proper mixture and balance of tenants and failing to obtain Macy's written approval of expansion at the Mall.  As set forth above, though Plaintiff will not have the burden on these claims at trial, as the party moving for summary judgment Plaintiff has the burden of establishing that summary judgment is appropriate as a matter of law.

    1.    *Proper Mixture and Balance of Tenants*

Under Section XXII(A)(2)(b) of the REA, Plaintiff must "[u]se its best efforts to . . . [h]ave at all times a proper mixture and balance of occupants."  Defendant contends that, "[a]s a result of the construction, configuration, and design of . . . unauthorized improvements, University Mall does not have a proper mixture and balance of occupants."[17]

Plaintiff argues that it has not violated this provision of the REA and that any claim under this provision has been superceded by the Lease Agreement.  Specifically, Plaintiff argues that Section 36.4 of the Lease Agreement eliminated any rights Defendant may have had under the REA.  Section 36.4 of the Lease provides: "Landlord reserves the absolute right to effect such other tenancies in the Shopping Center as Landlord, in the exercise of its sole business judgment, shall determine to best promote the interests of the Shopping Center."

Defendant contends that Plaintiff has not maintained a proper mixture and balance of occupants, that Plaintiff has not presented any evidence that it has, and that the Lease did not supercede the REA.

---

[17]Docket No. 13, ¶ 19.

As an initial matter, the Court notes that Plaintiff has presented no evidence concerning its efforts to maintain a proper mixture and balance of occupants.  Thus, the Court cannot determine as a matter of law whether Plaintiff has breached this provision of the REA.  Therefore, Plaintiff is not entitled to summary judgment on this portion of Defendant's counterclaim unless its contention that the REA, or at least portions of the REA, have been superceded by the Lease.

Utah courts "will assume that a writing dealing with the *same subject* was intended by the parties to supercede any prior or contemporaneous agreements."[18]  "However, one contract will not supersede another unless it is plainly shown that [such] was the intent of the parties; and this is usually where the later contract fully covers [the] earlier one."[19]  "[W]here it is claimed that by reason of inconsistency between the terms of a new agreement and those of the old the old one is discharged, the fact that such was the intention of the parties must clearly appear."[20]

A review of the different agreements leads to the conclusions that the Lease does not supercede the REA or the Second Amendment.  The REA and the Second Amendment are broad agreements between the developer and the various department stores concerning the development, maintenance, improvement, and operation of the University Mall.  The Lease, on the other hand, relates solely to the relationship between Plaintiff, as landlord, and Defendant, as Tenant.  Importantly, neither party has expressed any indication that they are no longer bound by

---

[18] *Novell, Inc. v. Canopy Grp.*, 92 P.3d 768, 772 (Utah 2004).

[19] *Ward v. IHC Health Servs., Inc.*, 173 P.3d 186, 190 (Utah 2007) (quotation marks and citations omitted).

[20] 17B C.J.S. Contracts § 598.

the REA and the Second Amendment, thus negating any finding that the Lease was meant to supercede the REA and/or the Second Amendment.  Because the Lease does not supercede the REA or the Second Amendment, the Court must construe these agreements "as a whole and harmonize their meanings if possible."[21]

The above-cited provision of the Lease and the REA can be read together and harmonized.  While the Lease Agreement provides that Plaintiff has the right to make decisions concerning tenancies, the REA requires Plaintiff to use its best efforts to have a proper mix and balance of occupants.  These provisions are not inconsistent.  As Plaintiff has presented no evidence on whether it has used its best efforts to have a proper mix and balance of occupants, it has failed to meet its burden on summary judgment.  Therefore, Plaintiff's request for summary judgment on this portion of Defendant's counterclaim will be denied.

   *2.   Written Approval*

Defendant argues that Plaintiff breached two provisions of the Second Amendment by failing to obtain its written approval before engaging in certain construction at the mall. Defendant relies on two provisions in support of this claim.  Section 6(d)(3) of the Second Amendment, amending Section V of the REA, provides: "Any future structural additions to the Enclosed Mall or to the Shopping Center shall be subject to prior written approval of ZCMI, Penney and Mervyn's."   Section 32(a), amending Section XXXIV(B) of the REA, states: "Developer shall have no right to future expansion for Developer Mall Store floor area without the prior written approval of ZCMI, Penney and Mervyn's."

---

[21] *Cox v. Cox*, 877 P.2d 1262, 1269 (Utah Ct. App. 1994).

Plaintiff first argues that the Developer Mall Store floor area has not changed and, therefore, Defendant cannot prevail.  However, from the evidence presented the Court cannot discern whether the Developer Mall Store floor area has been altered.  Therefore, Plaintiff has failed to meet its burden on summary judgment.  Additionally, this argument would apply only to Section 32(a).  Section 6(d)(3) is much broader, requiring written approval for "[a]ny future structural additions to the Enclosed Mall or to the Shopping Center."  Therefore, the argument that the Developer Mall Store floor area has not changed does not resolve this matter completely.

Plaintiff next argues that two provisions of the Lease Agreement demonstrate that Defendant provided the necessary written approval.  First, Plaintiff points to Section 31.3 of the Lease which states, in pertinent part: "Tenant hereby acknowledges that Landlord will be expanding the Air Conditioned Mall which expansion may include the addition of a fourth anchor store; the addition of up to 180,000 square feet of additional gross leasable area (GLA), part of which may be used for a new small store and/or pad GLA; and, a new food court."  Next Plaintiff points to Section 21.1 of the Lease, which provides that Plaintiff reserves the right "to construct additional buildings or additions on existing buildings or other improvements in the Shopping Center."

The Court disagrees with Plaintiff's contention that these provisions provide the necessary written approval.  Section 31.3 merely acknowledges that Defendant is aware that Plaintiff will be expanding the Air Conditioned Mall.  Acknowledgment is different than permission.  Section 21.1 is even less helpful.  That section merely states that Plaintiff reserves the right to construct additional buildings or additions on existing buildings or other

improvements in the Shopping Center. The fact that Plaintiff reserves this right does not mean that Defendant has given written permission and does nothing to negate the requirements of the Second Amendment.

Plaintiff further argues, as it did with relation to Section XXII(A)(2)(b) of the REA, that the Lease has superceded the Second Amendment. For the same reasons set forth above, the Court must reject this argument. Therefore, because Plaintiff has failed to present the Court sufficient information to determine that a violation of the Second Amendment has not occurred, the Court must deny summary judgment.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 24) is GRANTED IN PART AND DENIED IN PART as set forth above.

Pursuant to the Court's standard practice, the Court will refer this case to settlement before a Magistrate Judge.

DATED   March 23, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge